UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:18-CR-137 DRL-MGG |
| RAMON LENOIR, | |
| Defendant. | |

## OPINION & ORDER

Ramon Lenoir moved *pro se* for compassionate release. The government opposes his motion. Compassionate release is governed by 18 U.S.C. § 3582(c)(1), which says the court generally "may not modify a term of imprisonment once it has been imposed." One exception, argued here, is when "extraordinary and compelling reasons warrant" a reduction. 18 U.S.C. § 3582(c)(1)(A)(i).

The commentary of U.S.S.G. § 1B1.13 provides guidance. *See United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *see also* U.S.S.G. § 1B1.13 app. n.1 (accounting for medical conditions, age, or family circumstances). Even then, release must satisfy the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Cochran*, 833 F. Appx. 5, 9 (7th Cir. 2020). The government doesn't contest that Mr. Lenoir exhausted his administrative remedies. *See United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021).

The court sentenced Mr. Lenoir in December 2019 to 60 months for possession of a firearm in furtherance of a drug trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A). This was the statutory minimum sentence. He has been continuously detained since October 4, 2019, so he has served about 18 months. He is scheduled for release on February 2, 2024. He is 39 years old. Though it appears he wrote his

motion while at FCI Terre Haute and the government responded while he was at Oklahoma City FCP, the BOP website says he now resides at Lexington FMC.[1] Mr. Lenoir's motion fails on two grounds.

First, his circumstances are neither compelling nor extraordinary. He says he has multiple health issues warranting compassionate release during the COVID-19 pandemic: type 1 diabetes, high blood pressure, high cholesterol, and anemia (ECF 46). The CDC doesn't say either high cholesterol or anemia make Mr. Lenoir more likely to get severely ill from COVID-19. Though type 1 diabetes and high blood pressure may make him more likely to get severely ill from COVID-19, the BOP has implemented the measures recommended by the CDC to mitigate the pandemic's risk.[2]

Most important, Mr. Lenoir has been fully vaccinated against COVID-19. He received the first and second doses of the Pfizer-BioNTech vaccine on December 31, 2020 and January 19, 2021. The BOP has treated his medical conditions (ECF 46-1 at 7-8; ECF 52-1 at 1, 8, 21; ECF 52-2 at 8, 16, 24) and his anemia appears to have improved over time (ECF 52-2 at 16, 159, 180). His medical records show that the BOP has administered many blood tests to check his blood sugar, given him a glucometer so that he can test his own sugar, and prescribed multiple medications to help him control his blood sugar. Mr. Lenoir's inoculation makes his risk of contracting COVID-19 minimal, not an extraordinary or compelling risk.

At 39 years old, he is at a lower risk than older adults for severe COVID-19 complications, particularly those over the age of 65. More than 80 percent of COVID-19 deaths occur in people over age 65, and more than 95 percent of COVID-19 deaths occur in people older than 45.[3] Prior to his transfer to Oklahoma City from Terre Haute, Mr. Lenoir was screened and tested negative for

---

[1] https://www.bop.gov/inmateloc/

[2] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

COVID-19 (ECF 52-2 at 128). Mr. Lenoir hasn't shown any deficiencies in the BOP's care or any acute risks from this pandemic.

Much of his motion discusses the circumstances of COVID-19 in BOP facilities, but a generalized complaint about COVID-19 nationally is neither extraordinary nor compelling. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). The risk of contracting COVID-19 exists everywhere. He says the Terre Haute BOP facility didn't properly test inmates for COVID-19, but he no longer resides there. He also tested negative for COVID-19 when transferring out of that facility, so any alleged insufficient practices there had no impact on Mr. Lenoir.

Mr. Lenoir then resided at Oklahoma City FTC, which houses approximately 839 inmates.[4] The BOP has vaccinated 126 inmates there along with 110 staff members. Four inmates have currently tested positive for COVID-19 there. 490 inmates and 66 staff members have recovered from the virus at the facility.[5] The conditions at this facility aren't compelling or extraordinary for his early release, particularly when he no longer resides there.

The facility he is at now—Lexington FMC—fares even better. It houses about 1,165 inmates,[6] and no inmates currently have tested positive for COVID-19. 719 inmates have already recovered from the virus here. 585 inmates have been vaccinated here, and the number trends upward as time progresses.[7] COVID-19 deaths have been tragically high, but the pandemic has trended downward for some time while the number of vaccinations trends upward, even being watchful of additional

---

[4] https://www.bop.gov/locations/institutions/okl/

[5] *Id.*

[6] https://www.bop.gov/locations/institutions/lex/

[7] https://www.bop.gov/coronavirus/

strains and developments of late. Several vaccines are in use in the United States. Rising inoculations among inmates precipitously mitigate any risk he has at the facility.

Mr. Lenoir's risk of being infected with COVID-19 at Lexington FMC remains low, especially contrasted with the number of infections in the general public and his own vaccination. The BOP continues to practice social distancing, mask wearing, and sanitization, which the CDC recommends as effective practices to minimize one's risk to COVID-19. More than this, the BOP has been heroically undeterred in combatting the challenges of the COVID-19 pandemic. There is no evidence on this record that his medical conditions are either extraordinary or compelling reasons for release.

Second, federal sentencing factors militate against compassionate release. *See* 18 U.S.C. § 3553(a); *Cochran*, 833 F. Appx. at 9. Mr. Lenoir was sentenced to 60 months imprisonment about 16 months ago (ECF 41). He has served less than half his sentence, and nothing justifies terminating the sentence now.

Mr. Lenoir dealt drugs and possessed six firearms in his own family's home, including where his wife and four children resided. *See* 18 U.S.C. § 3553(a)(1). He possessed two semiautomatic weapons. *See* 18 U.S.C. §§ 3553(a)(2)(A) and (C). These were stored in his nightstand, an easily accessible location. While he legally possessed the firearms and isn't penalized for his desire to protect his family, his possession of the firearms while dealing drugs is a grave concern. He possessed over 1,000 rounds of ammunition in his home, 6.8 grams of cocaine, about 334.7 grams of methamphetamine, and 163 grams of marijuana—significant amounts. *See* 18 U.S.C. § 3553(a)(1). His offense endangered the lives of his family and those in the surrounding community. *See* 18 U.S.C. § 3553(a)(2)(C). He did so while in a position of influence as a children's basketball coach, a betrayal of trust to those he was called to mentor. The court noted at sentencing that a sentence above the statutory minimum may have been warranted but for the court's conviction that he should return to

4

his family after service of his sentence and to reward him for his acceptance of responsibility. *See* U.S.S.G. § 3E1.1.

More is now known. Though Mr. Lenoir was credited for acceptance of responsibility, his motion now downplays his crime: he says he "never possessed a gun while engaging in drug activity" (ECF 46 at 2). This contradicts his plea and an element of the crime. *See The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit, 18 U.S.C. § 924(c)(1)(A) Using or Carrying A Firearm During and in Relation to a Crime of Violence or Drug Trafficking Crime* 315 (2020 ed.) ("The defendant knowingly [used; carried] a firearm during an in relation to such crime."). His seeming denial of the full crime demonstrates that his acceptance of responsibility hasn't held sway, or that the need for deterrence or the need to promote respect for the law has lessened. *See* 18 U.S.C. §§ 3553(a)(2)(A), (a)(2)(B).

Though Mr. Lenoir had a low criminal history, his actions while imprisoned show he remains at high risk for future crime. In August 2020, less than a year after sentencing, he tried to bring 29.1 grams of methamphetamine, 30 oxycodone pills, alcohol, tobacco, and a cell phone into a BOP facility (ECF 52-3). Yet he seems to think the court wouldn't notice this: he didn't mention it in his motion, instead saying he has "been a model citizen of the system" since he was incarcerated (ECF 46 at 1). That he would act so obviously in misrepresenting his conduct while incarcerated displays an ongoing disrespect for the law. *See* 18 U.S.C. § 3553(a)(2)(A). His ongoing criminal conduct, even while incarcerated, and his misrepresentation today don't support early release.

Considering the federal sentencing factors, the COVID-19 precautions the BOP is taking, Mr. Lenoir's vaccination, and the BOP's ability to care for inmates with similar medical conditions, the court DENIES Mr. Lenoir's request for compassionate release or to serve the remainder of his sentence in home confinement (ECF 46) and GRANTS the government's motion to seal (ECF 53).

SO ORDERED.

April 19, 2021                                                           *s/ Damon R. Leichty*
                                                                                          Judge, United States District Court